IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL HULICK,  )
  )
      Plaintiff,  )
  )
   v.  ) Civil Action No. 18-313-E
  )
  )
COMMISSIONER OF  )
SOCIAL SECURITY,  )
  )
      Defendant.  )

O R D E R

AND NOW, this 18th day of December, 2019, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 8), filed in the above-captioned matter on February 19, 2019,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 6), filed in the above-captioned matter on January 18, 2019,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent it seeks remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.**    **Background**

On February 29, 2016, Michael Hulick filed a claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Specifically, Plaintiff claimed

1

that he became disabled on February 1, 2014, due to a neck injury, neck surgery, depression, carpal tunnel syndrome, arthritis, fused neck discs, pinched nerves, possible torn rotator cuff, numbness in his arm and fingers, and muscle spasms. (R. 133-34).

After being denied initially on May 13, 2016, Plaintiff sought, and obtained, a hearing on October 27, 2017, before an Administrative Law Judge ("ALJ"). (R. 167-71, 88-121). In a decision dated January 5, 2018, the ALJ denied Plaintiff's request for benefits. (R. 144-60). Upon review, in an Order dated March 16, 2018, the Appeals Council remanded the matter to the ALJ with specific instructions. (R. 161-66). After additional evidence was submitted and another hearing was held on June 22, 2018, the ALJ again denied Plaintiff's request for benefits. (R. 36-79, 12-35). The Appeals Council issued a denial on September 12, 2018. (R. 1-5). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate "some 'medically determinable basis for an impairment that prevents him [or her] from engaging in any substantial gainful activity for a statutory twelve-month period.'" Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer, 186 F.3d at 427 (internal citation omitted)). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 404.1520(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S.

137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 404.1520(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

## III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date, February 1, 2014. (R. 17). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had certain severe impairments, particularly, degenerative disc disease of the cervical spine with radiculopathy status post fusion surgery, status post fracture of the left knee fibular head, and chronic obstructive pulmonary disease. (R. 17). The ALJ further concluded that Plaintiff's impairments did not meet any of the Listings that would satisfy Step Three. (R. 20).

The ALJ next found that Plaintiff retained the RFC to perform sedentary work, except that he would need to alternate between sitting and standing at thirty minute intervals without being off task; can occasionally climb ramps and stairs, balance, stoop, kneel or crawl but never crouch or climb ladders, ropes, or scaffolds; must avoid unprotected heights, dangerous moving mechanical parts, and otherwise dangerous machines; must avoid concentrated exposure to extreme cold, vibrations, fumes, odors, dusts, gases, and other irritants; is limited to work that is simple and routine; would not be able to work on a production line where turning of the head is required because he can only occasionally turn his head or neck; and can never reach overhead bilaterally, but can occasionally reach in all other directions bilaterally provided it is not above shoulder height, and can occasionally finger and feel bilaterally. (R. 21).

At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work, so she moved on to Step Five. (R. 26). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the

national economy, such as election clerk, call out operator, and surveillance system monitor. (R. 27). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 28).

## IV. Legal Analysis

Plaintiff raises several arguments as to why he believes that the ALJ erred in finding him to be not disabled. While the Court does not fully agree with the arguments Plaintiff sets forth, it does agree that remand is warranted in this case. Specifically, because the Court finds that, despite the Appeals Court ordering the ALJ, upon remand, to evaluate adequately the medical source opinions of Patricia A. Schmitt-Slaughter, OTR/L, and to provide a clear rationale with specific references to the evidence of record in support of the limitations assessed in the RFC, the ALJ failed to do so. Accordingly, the Court cannot find that the ALJ's RFC is supported by substantial evidence and will, therefore, remand the case for further consideration.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. § 404.1545(a)(1). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports

each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Upon review of the first ALJ decision in this case, the Appeals Council found that the ALJ failed to provide an evaluation of the "other medical source opinions" prepared by Ms. Schmitt-Slaughter. (R. 163). The Appeals Council noted that, although the ALJ explained that she gave "great weight" to the first Functional Capacity Evaluation by Ms. Schmitt-Slaughter (completed on December 12, 2016) because it was consistent with the totality of the medical evidence and Plaintiff's physical examination findings, the RFC in the ALJ's decision was not entirely consistent with the findings contained in that opinion. (R. 163). Specifically, the Appeals Council explained that the RFC did not contain a limitation corresponding to Ms. Schmitt-Slaughter's finding that Plaintiff would not be able to tolerate prolonged sitting/standing and would require frequent opportunities for positional changes when performing activities. (R. 163).

Further, the Appeals Council also found that the ALJ's first decision did not include an evaluation of the second Functional Capacity Evaluation by Ms. Schmitt-Slaughter (completed on June 2, 2017). (R. 164). The Appeals Council noted that Ms. Schmitt-Slaughter's second opinion found, in part, that Plaintiff can occasionally lift 25 pounds from the floor, 35 pounds from the waist, and 7 pounds from the shoulder and overhead, but can carry only a negligible amount of weight, and that Plaintiff's hand strength and coordination skills were below the 10th percentile bilaterally and that she had diminished tactile sensation in the bilateral hands. (R. 164). The Appeals Council concluded that the ALJ was also required to consider this second opinion on remand. The Appeals Council's order specifically instructed the ALJ, upon remand, to give further consideration to Plaintiff's maximum RFC "during the entire period at issue and

7

provide rationale with specific references to evidence of record in support of assessed limitations." (R. 164). Moreover, the Appeals Council ordered the ALJ to "evaluate the treating, nontreating, nonexamining, and other medical source opinions pursuant to the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence." (R. 164).

As noted, supra, the case was remanded, a new administrative hearing was held, and the ALJ issued a second decision, again finding Plaintiff to be not disabled. Upon review of the ALJ's second decision, the Court finds that the ALJ, once again, did not adequately explain her treatment of Ms. Schmitt-Slaughter's opinions, nor did the ALJ provide an adequate explanation for her decision not to include in Plaintiff's RFC certain limitations found in those opinions. While the ALJ summarized some of the findings from both of Ms. Schmitt-Slaughter's opinions—and explained that she was giving the opinions "great weight"—the ALJ also asserted that "great weight is not controlling weight where the [RFC] would be expected to embrace without exception all findings from the evaluation." (R. 25). Regardless of the ALJ's comment about the implications of giving opinions "great" versus "controlling" weight, the Court emphasizes that the ALJ was, in any event, required to explain why she rejected the findings that she did in determining Plaintiff's RFC.

For example, the RFC formulated by the ALJ provided that Plaintiff could maintain a workday with positional changes between sitting and standing every half hour, and that Plaintiff would not be off task while such positional changes were occurring. (R. 21). In her first opinion, however, Ms. Schmitt-Slaughter found that Plaintiff could sit, stand and walk for "<1 hours at one time," and she further explained that, during testing, Plaintiff, due to pain, "sat after 1 minute of standing. He stood again at 5 minutes, sat at 6 minutes, stood at 14 minutes, and sat again at 15 minutes to complete task." (R. 983, 985). In her second opinion, Ms. Schmitt-

8

Slaughter did not indicate that Plaintiff could sit, stand and walk for any period of time with breaks, and she explained that during testing Plaintiff was "[u]nable to stand to perform and sat after 2 minutes." (R. 1160, 1162). Nevertheless, despite expressly giving both of these opinions great weight in her analysis, the ALJ failed to address these findings regarding Plaintiff's sit/stand limitations, even though such limitations are clearly not compatible with the RFC that Plaintiff can make positional changes every half hour and remain on task while doing so.

Additionally, the RFC formulated by the ALJ in her second decision provided that Plaintiff could occasionally finger and feel bilaterally, meaning that he could perform work fingering and feeling bilaterally up to one third of each workday. (R. 21). In Ms. Schmitt-Slaughter's first opinion, however, she explained that Plaintiff had completed the entire assembly testing using the right hand only, and she found that, along with being unable to tolerate prolonged sitting/standing and requiring frequent opportunities for positional changes, Plaintiff's assembly rate was only 60% and was thus "below production rate standard." (R. 983, 985). Further, in her second opinion, Ms. Schmitt-Slaughter found Plaintiff's assembly rate to be only 50%, his hand tremoring was noted after only 20 minutes, his hand strength and coordination skills were found to be below the 10th percentile bilaterally, and he was found to have diminished tactile sensation in both hands. (R. 1160, 1162). Here again, although the ALJ gave Ms. Schmitt-Slaughter's opinions great weight in her analysis, the ALJ did not explain how she reconciled her RFC—which allowed for bilateral fingering and feeling for up to one third of the day—with Ms. Schmitt-Slaughter's findings of greater limitations.

Accordingly, because the ALJ did not provide an adequate explanation of her reasons for rejecting these limitations from Ms.Schmitt-Slaughter's two opinions, it is not apparent to the Court whether the ALJ's decision in this regard was based on substantial evidence. While the

9

ALJ was certainly not required to adopt all the findings contained in these opinions, she was required to explain adequately her basis for rejecting them if she chose to do so. See Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993) (explaining that, when conflicting evidence exists, and ALJ may choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason" (internal citation omitted)); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (stating that an ALJ "must consider all the evidence and give some reason for discounting the evidence she rejects"). Thus, the ALJ's comments concerning the limitations found in the opinions of Ms. Schmitt-Slaughter do not allow the Court to determine the basis for her decision to give great weight to those opinions but still reject various findings contained therein. Remand is therefore required to allow for more focused discussion regarding the ALJ's rationale for rejecting the limitations found by Ms. Schmitt-Slaughter and for finding that such limitations did not need to be included in Plaintiff's RFC.

The Court notes that, since this case was previously remanded by the Appeals Council for much the same reason that it is being remanded now, the ALJ should ensure that all of Plaintiff's limitations are addressed appropriately on remand. Additionally, the ALJ should, of course, ensure that proper weight be accorded to the various other opinions and medical evidence presented in the record, and she should verify that her conclusions at all steps of the sequential evaluation process are adequately explained, in order to eliminate the need for any future remand. Indeed, the Court expresses no opinion as to whether the ALJ's RFC determination regarding Plaintiff's impairments could, in fact, be supported by the record. It is, instead, the need for further explanation that mandates the remand on this issue.

## V. Conclusion

In short, the record does not permit the Court to determine whether the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch<br>United States District Judge

ecf:         Counsel of record